1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10    KAVASIO K. HALL,

11              Petitioner,              2: 10 - cv - 714 - WBS TJB

12        vs.

13    MIKE McDONALD,

14              Respondent.              ORDER, FINDINGS AND

15                                       RECOMMENDATIONS

16    _____/

17        Petitioner, Kavasio K.Hall, is a state prisoner proceeding with a *pro se* petition for writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a sentence of twenty-

19    four years to life in prison after a jury convicted him of kidnapping for the purpose of committing

20    robbery, first degree robbery, and the acquisition of another's access card information for

21    fraudulent purposes.  Petitioner raises three claims in this federal habeas petition; specifically: (1)

22    that his conviction for aggravated kidnapping was based on insufficient evidence ("Claim I"); (2)

23    that his sentence is cruel and unusual under the Eighth Amendment ("Claim II"); and, (3) that his

24    right to an impartial tribunal was violated when the trial judge repeatedly asked witnesses

25    questions ("Claim III").  For the reasons stated herein, the federal habeas petition should be

26    denied.

# I.  FACTUAL BACKGROUND[1]

A jury found defendant Kavasio Hall guilty of kidnapping for the purpose of committing robbery, first degree robbery, and the acquisition of another's access card information for fraudulent purposes. The court sustained recidivist allegations and, after extended posttrial proceedings, sentenced defendant to state prison for a determinate term of 10 years and a consecutive indeterminate term of 14 years to life. . . .

On a January 2007 evening, the victim was walking down P Street through midtown Sacramento to meet a friend and then join her boyfriend. As she approached 22nd Street, the codefendant crossed P Street and approached her from behind in the middle of the intersection. He placed a pointed object that she took for a gun against her neck and grabbed her, directing her to be quiet and comply with his demands.

He directed her to a dark spot by some tall shrubbery on 22nd Street. He rummaged through her pockets and purse, and checked under her bra. During this search of her person, a car (which the victim thought had passed her earlier along her walk) parked next to them. The codefendant handed the victim's purse to the driver.

The victim did not get a good look at the driver. She made a hesitant selection of defendant's photo in a line-up as looking the most like the driver, but admitted at trial that she could not confirm with certainty that defendant was in fact the driver. She was, however, later able to identify the car in which she had been riding.

After the codefendant conferred with defendant at the car, he came back and told the victim to get in the car. She resisted because this was "the biggest thing that [she] was fearing." However, she heard what sounded like the sound of a gun being "charged" (by which we assume she meant its slide was being operated). As a result, she got into the car without any express threats from defendants.

As they drove off, the codefendant asked where she had a bank account. She told him Washington Mutual. At this point, she could see that they were near N and 28th Streets and told them the nearest branch was back at Capitol Avenue and 21st Street (not wanting to be stranded at some distant location). At some point during the ride, the codefendant demanded that the victim give him her cell phone.

/ / /

---

[1]  The factual background is taken from the California Court of Appeal, Third Appellate District decision on direct appeal from May 2009 and filed in this Court by Respondent on July 1, 2010 as Exhibit A to his answer (hereinafter referred to as the "Slip Op.") (footnote omitted).

Defendant parked the car on 21st Street down the block from the bank. The codefendant handed the victim her ATM card. She withdrew all the money she had in the account. Although there were a few girls walking by, she was too afraid to seek their assistance because she did not know how much help they would be. She returned to the car, handing them $280 and the receipt to show that she could not withdraw any more cash. Giving back her purse (but keeping her cell phone and wallet, which had $100 inside), the codefendant asked if the victim wanted them to take her back to P and 22nd Streets. She declined the offer and they drove off. She walked to K and 24th Streets where her boyfriend was waiting for her and phoned 911 on his cell phone.

In closing argument, the prosecutor clarified that while there were two distinct robberies in this case (for which reason the court instructed on the need for unanimity), the charged kidnapping commenced when defendants forced her into the car for the purpose of the robbery that occurred at the ATM (which was the only robbery charged in the information). The prosecutor argued that this transit resulted in substantial psychological harm to the victim, who no longer feels safe to walk in Midtown Sacramento.

## II.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  *See* 28 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  *See Lindh v. Murphy*, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.  *See* 28 U.S.C. 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

/ / /

1   In applying AEDPA's standards, the federal court must "identify the state court decision

2   that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

3   "The relevant state court determination for purposes of AEDPA review is the last reasoned state

4   court decision."  *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

5   "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

6   orders upholding that judgment or rejecting same claim rest upon the same ground."  *Ylst v.*

7   *Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

8   must conduct an independent review of the record to determine whether the state court clearly

9   erred in its application of controlling federal law, and whether the state court's decision was

10   objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The

11   question under AEDPA is not whether a federal court believes the state court's determination

12   was incorrect but whether that determination was unreasonable—a substantially higher

13   threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

14   "When it is clear, however, that the state court has not decided an issue, we review that question

15   *de novo*."  *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

16   545 U.S. 374, 377 (2005).

17   III.  ANALYSIS OF PETITIONER'S CLAIMS

18   1. Claim I

19   In Claim I, Petitioner argues that there was insufficient evidence to support a guilty

20   finding with respect to the charge of kidnapping for the purpose of committing robbery (also

21   referred to as "aggravated kidnapping").  Specifically, Petitioner contends that there is

22   insufficient evidence to show that "the movement of the victim [was] beyond that merely

23   incidental to the commission of, and increase[d] the risk of harm to the victim over and beyond

24   that necessarily present in" the underlying robbery as required by California Penal Code section

25   209(b)(2).

26   / / /

4

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction, if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'"  *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  A petitioner for writ of habeas corpus "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds."  *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).

A federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law.  *See Jackson*, 443 U.S. at 324 n. 16.  California law defines kidnapping for the purpose of committing robbery as follows:

> (1) Any person who kidnaps or carries away any individual to commit robbery . . . shall be punished by imprisonment in the state prison for life with the possibility of parole.

> (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense.

Cal. Penal Code § 209(b).  The California Court of Appeal stated the following in analyzing this Claim on the merits:

> ### The Element Of Asportation

> The asportation element of aggravated kidnapping requires the trier of fact to apply two interrelated concepts. For all actual distances that are more than de minimis (there not being any particular standard that the distance must exceed otherwise), the asportation cannot be merely "incidental" to the underlying intended crime. The asportation must also increase the risk of harm inherent in the underlying intended crime. ( *People v. Dominguez* (2006) 39 Cal.4th 1141, 1150; *People v. Daniels* (1969) 71 Cal.2d 1119,

5

1139; cf. *People v. Martinez* (1999) 20 Cal.4th 225, 237-238 [discussing instruction on necessary distance for both simple and aggravated kidnapping].)

Not that the customary buzzwords aid much in reducing the level of abstraction of the term "incidental," but it embraces a consideration of the scope and nature of the movement in the context of its environment. ( *People v. Dominguez*, *supra*, 39 Cal.4th at p. 1151.) As for assessing the increased risk, this inquiry includes the consideration of whether the asportation decreased the ability of others to detect the crime, enhanced the ability to commit additional crimes, and increased the risk of injury to the victim *whether it actually occurs*. ( *Id.* at p. 1152; *People v. Rayford* (1994) 9 Cal.4th 1, 13-14; *In re Earley* (1975) 14 Cal.3d 122, 132.) The increased risk of injury can be psychological. ( *People v. Nguyen* (2000) 22 Cal.4th 872, 886.)

Defendant argues the distance travelled in the present case was an essential part of the robbery and facilitated it directly because he and his cohort could not achieve the goal of accessing the money in the victim's account without travelling to it in the car. However, while the car ride was "perhaps incidental to [their] *particular* plan for [robbery], it was not incidental to the actual commission of the crime itself." (Cf. *People v. Salazar* (1995) 33 Cal.App.4th 341, 347, italics added [compelled movement to commit rape].) A robbery that incorporates a transit of more than a minimal distance does not render the transit merely incidental to the robbery even where its sole purpose is to facilitate the robbery. ( *In re Earley*, *supra*, 14 Cal.3d at pp. 129-130; *People v. James* (2007) 148 Cal.App.4th 446, 455 [whether movement is necessary to robbery does not of itself make it incidental, even though inverse true ( lack of necessity is basis for finding movement is not incidental) ]; *People v. Smith* (1992) 18 Cal .App.4th 1192, 1196; *People v. Daniels* (1988) 202 Cal.App.3d 671, 683.)

As for whether the asportation increased the risk inherent in robbery, defendant argues that even if the victim was taken off a public street and placed into a car, the robbery itself took place in a public location in the view of nearby pedestrians. He also points to the absence of any actual harm to the victim in the process of transportation or at the scene of the robbery (distinguishing other cases on the grounds that they involved the infliction of actual injury to the victim or involved erratic or inebriated driving).

We do not need to make a digest of the holdings in these various cases. In this fact specific context, it serves little purpose to compare one case with another. (See *State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 202.) We have already pointed out that it is the possibility of harm, and not the happenstance of its absence, that is determinative of the issue. The baseline with which we compare the increase in risk is that of a

typical robbery in the abstract, which involves the use of force or fear and minimal movement. (*People v. Jones* (1997) 58 Cal.App.4th 693, 714.) Asporting a victim for a significant distance in an automobile involves any number of possible dangers, including accidents or injury to a victim escaping or being pushed from an automobile. (*Id.* at p. 713; *In re Earley*, *supra*, 14 Cal.3d at p. 132.) Furthermore, both in the abstract and in the circumstances of the present case, the transportation of a young woman against her will in a car with two men gives rise to significant psychological stress. Therefore, the fact the eventual destination may not have decreased the risk of detection (though we note the absence of any signs visible to the public that the victim was in the process of being robbed) or increased the risk of additional crimes is beside the point. Moreover, defendant claimed at trial that he was under the influence of drugs that night, which if true certainly increased the risk of an accident. In short, the evidence of asportation was sufficient to support aggravated kidnapping.

Slip Op. at 4-7 (footnote omitted).

Petitioner does not dispute the underlying factual basis of his conviction.  Rather, Petitioner argues that under the facts as set forth in the Court of Appeal decision, Petitioner's actions did not amount to movement that was more than incidental to the underlying crime nor did they did increase the risk of harm to the victim.  The California Court of Appeal interpreted California law to the contrary, and such a determination is binding upon a federal court reviewing a petition for habeas corpus.  *See Jackson*, 443 U.S. at 324 n. 16; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." (citations omitted)); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Interpreting California law, The California Court of Appeal determined that a "robbery that incorporates a transit of more than a minimal distance does not render the transit merely incidental to the robbery even where its sole purpose is to facilitate the robbery."  Slip Op. at 5 (citing *In re Earley*, 14 Cal.3d 122, 132,  534 P.2d 721, 120 Cal.Rptr. 881 (1975)) (other

1   citations omitted).  Furthermore,  the Court of Appeal concluded that under California law

2   transporting a victim in a vehicle is enough to increases the risk of harm to the victim over and

3   above that necessarily present in a robbery.  *See* Slip Op. at 6-7 ("Asporting a victim for a

4   significant distance in an automobile involves any number of *possible* dangers, including

5   accidents or injury to a victim escaping or being pushed from an automobile." (citing *People v.*

6   *Jones*, 58 Cal.App.4th 693, 713, 68 Cal.Rptr.2d 506 (1997); *In re Earley*, 14 Cal.3d at 132)).

7   The increased risk of harm can even be psychological.  Slip Op. at 5 (citing *People v. Nguyen*, 22

8   Cal.4th 872, 876, 997 P.2d 493, 95 Cal.Rptr.2d 178(2000)).  Thus, so long as there is evidence

9   from which a jury could conclude Petitioner transported the victim in a car in the course of

10  performing the robbery, there is ample evidence for a conviction under California Penal Code

11  section 209(b).

12       The victim testified at trial regarding the incident and described for the jury how

13  Petitioner and his accomplice forced her into the vehicle and drove her to an ATM machine

14  where she withdrew the remaining money in her account.  *See* Rep.'s Trans. on Appeal

15  (hereinafter "Rep.'s Trans.") at 95-106.  Petitioner admits that the evidence adduced at trial

16  showed as much.  *See* Mem. of P. & A. in Supp. of Traverse, at 4-5.  The victim testified that

17  Petitioner's accomplice told her to "get in," and she got into the backseat of the car.  *Id.* at 95.

18  She recognized an air freshener that had been hanging from the rear view mirror and introduced

19  in evidence by the prosecution.  *Id.* at 96.  "Once [she] was in the car, they started driving" and

20  the victim proceeded to give them directions to the closest ATM.  *Id.* at 98, 100.  Viewing the

21  evidence in the light most favorable to the prosecution, there is ample evidence from which the

22  jury could conclude that Petitioner had transported the victim in a vehicle, all that is necessary

23  for a conviction under California  Penal Code section 209(b).  Petitioner fails to meet his heavy

24  burden to warrant granting federal habeas relief on this insufficiency of the evidence argument.

25  / / /

26  / / /

8

1    2.  Claim II

2        In Claim II, Petitioner asserts his sentence is cruel and unusual under the Eighth

3    Amendment.[2]  Petitioner claims that because the victim did not suffer any physical harm and only

4    a few hundred dollars, a cellphone, and some credit cards were stolen his sentence of twenty-four

5    years to life in prison is "unfair."  In ruling on Petitioner's claim on appeal, the California Court

6    of Appeal found as follows:

7                            *Cruel And Unusual Punishment*

8            Defendant did not at any point attempt to argue in the trial court
              that the length of his sentence was cruel and/or unusual in violation
9            of his rights under the federal and state charters. He invites us to
              decide this question of law (*People v. Martinez* (1999) 76
10           Cal.App.4th 489, 496) for the first time on appeal based on such
              facts as appear in the record.
11
              The problem is that this approach deprives the People of any
12           opportunity to develop a factual record in support of the
              constitutionality of the sentence. (Cf. *People v. Cole* (2001) 88
13           Cal.App.4th 850, 868-869 [unfair to consider this claim on appeal
              where not litigated in trial court as part of guilty plea, in addition to
14           being barred for lack of certificate of probable cause].) This is why
              we apply the rule of forfeiture to plenary consideration of the issue
15           on appeal (e.g., *People v. Norman* (2003) 109 Cal.App.4th 221,
              229), in accord with the general principle that a court should not
16           exercise its discretion to allow a litigant to raise a legal issue
              initially on appeal to obtain a reversal (see *Imagistics Internat.,*
17           *Inc. v. Department of General Services* (2007) 150 Cal.App.4th
              581, 589). As for defendant's perfunctory invocation of a claim that
18           trial counsel was ineffective, this is insufficient to compel us to
              reach the issue (see *People v. Oates*, *supr*a, 32 Cal.4th at p. 1068,
19           fn. 10), because we can easily presume on direct appeal that trial
              counsel possessed facts dehors the record showing the lack of merit
20           to the issue (see *People v. Pope* (1979) 23 Cal.3d 412, 426). We
              therefore confine ourselves to stating the criteria relevant to the
21           analysis, along with our abbreviated comments on how defendant
              fails to satisfy them.
22
              A defendant who wishes to show that a sentence is cruel or unusual
23           under the state Constitution must satisfy one or more of three

24    _____

25        [2]    Petitioner also contends that his sentence violates Article I, section 17 of the
      California Constitution.  This claim is not cognizable on a federal petition for habeas corpus,
26    and, therefore, is not addressed.  *See* 28 U.S.C. 2254(a) (relief may only be granted for a
      violation of the Constitution or laws or treaties of the United States); *Estelle*, 502 U.S. at 67-68.

criteria for demonstrating a disproportionate punishment. These include the nature of the offense and the offender (with particular attention to the degree of danger each presents to society), a comparison of the sentence with those for equivalent offenses under California law (which includes consideration of a defendant's recidivism and not just the current offense), and a comparison of the sentence with those in other states (which for purposes of challenging California's recidivist statutes generally avails a defendant nothing). (*In re Lynch* (1972) 8 Cal.3d 410, 425-427; *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1510-1516.) FN8

> FN8. The federal charter proscribes cruel and unusual punishment, a standard that is distinct from our state provision. (*People v. Anderson* (1972) 6 Cal.3d 628, 636-637.)

The United States Supreme Court has wrestled with whether there are any criteria to consider beyond the proportionality of the sentence to the nature of the offense and the offender. (*Solem v. Helm* (1983) 463 U.S. 277, 290-293 [77 L.Ed.2d 637, 649-651] [criteria include comparison of punishment with nature of offense and offender]; *Harmelin v. Michigan* (1991) 501 U.S. 957, 1004-1005 [115 L.Ed.2d 836, 871-872] (conc. opn. of Kennedy, J.) [affirming validity of only this criterion]; *id.* at pp. 1018-1019 [115 L.Ed.2d at pp. 880-881] (dis. opn. of White, J.) [affirming validity of all criteria]; *Ewing v. California* (2003) 538 U.S. 11, 23-24 [155 L.Ed.2d 108, 118-119] (plur. opn. of O'Connor, J.) [adopting Kennedy opn. in Harmelin ]; *id.* at p. 36 [155 L.Ed.2d at p. 126] (dis. opn. of Breyer, J.) [assuming same arguendo]; cf. at pp. 31-32 [155 L.Ed.2d at pp. 123-124] (conc. opns. of Scalia & Thomas, JJ.) [ no constitutional guarantee of proportionality].)

As this methodology in general overlaps California's first criterion, it does not warrant separate analysis, beyond noting that a minimum indeterminate life sentence of 25 years for a simple theft offense does not violate federal constitutional principles where the offender has a lengthy record (*Ewing v. California*, *supra*, 538 U.S. at p. 29 [155 L.Ed.2d at pp. 122-123]; see *Lockyer v. Andrade* (2003) 538 U.S. 63, 68-69, 76-77 [155 L.Ed.2d 144, 153-154, 158-159] [habeas will not lie because state court's conclusion-that a minimum indeterminate life sentence of 50 years for petty thefts is proportionate under federal law-is not unreasonable]), except where the present offense is for only a harmless

technical violation of a regulatory law. (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1072-1073 [life sentence for failure to update sex offender registration with duplicative data reaches bottom of the constitutional well under both charters].)

Defendant limits his argument to the first criterion under our state Constitution (although he adverts in passing to the federal rule). Regarding himself, defendant points to his age (26 at the time of the offense), and the facts in a statement of mitigation (filed in connection with sentencing) regarding his allegedly turbulent childhood. These include his witnessing (at age five) his mother kill his father, a diagnosis that he has bipolar disorder, and his multiple foster placements before reuniting with his mother at age 18 (at which time he was able to earn his high school equivalency degree).FN9 While in jail awaiting trial, he consulted with psychiatric staff who prescribed two psychotropic medications for schizophrenia and depression. As for the nature of the offense, he points to the absence of any physical injuries to the victim and the limitation of her losses to $380 in "cash, a cell phone, and some credit cards."

> FN9. This information contradicted the probation report's account of his background in numerous respects. We do not need to detail the factual disputes.

Although it may be enlightening to learn the possible bases for defendant's numerous transgressions, this does not diminish the danger he presents to members of the public should he lapse from his medical regime, nor must we define deviancy downward to excuse his flouting of society's mandates. As reflected in the probation report, he had one juvenile adjudication in 1995 and four additional adjudications from various Bay Area counties in 1997. As an adult, he has had convictions in 1999 for being an accessory to drug offenses; in 2001 for misdemeanor receipt of a stolen vehicle, for a felony drug offense, and for assault with a deadly weapon on a police officer and vehicle theft; in 2002 for misdemeanor possession of stolen checks; and in 2003 for vehicle theft. He thereafter committed three parole violations involving drugs (including one that resulted in his return to prison for resisting arrest and providing false identification to a police officer). His iterated refusals throughout his relative youth to conform his behavior to social strictures merits a greater punishment, even if the present offense was not among the most extreme examples of robbery.

This is not to say we accept his efforts at minimizing the nature of the present offense. As the trial court indicated in twice denying requests to exercise its discretion to dismiss a recidivist finding, the present offense was "extremely serious," giving the victim "the

most frightening experience of her lifetime," and was "fraught with the possibility of physical violence and danger to the victim." This is not a harmless technical violation that does not present any danger to society.

We do not find that the present sentence tests the depths of the constitutional well. The offense and offender entirely justify a prison term of 24 years to life. This is not remotely one of the "exquisite rarit[ies]" of disproportional punishment (*People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196) that shock our judicial conscience and offend fundamental notions of human dignity. ( *In re Lynch*, *supra*, 8 Cal.3d at p. 424.)

Slip Op. at 4-6 (some footnotes omitted).

Petitioner's claim is governed by the relevant Supreme Court authority clearly established at the time the relevant state court decision became final.  *Williams*, 529 U.S. at 390; *see Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004).  The decision of the California Court of Appeal in this case became final in 2009, before the Supreme Court's decision in *Graham v. Florida*, 560 U.S. __, 130 S.Ct. 2011, 175 L.Ed 825 (2010), which "settled on an authoritative answer to how reviewing courts should apply the [Eighth Amendment's] proportionality principle to non-capital cases."  *Norris v. Morgan*, 622 F.3d 1276, 1287 n. 12 (9th Cir. 2010).  Therefore, Petitioner's claim is governed by pre-*Graham* principles as set forth in *Ewing v. California*, 538 U.S. 11 (2003), and *Lockyer v. Andrade*, 538 U.S. 63 (2003).  *See Norris*, 622 F.3d at 1287.

The Eight Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines be imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The last clause "prohibits not only barbaric punishments," *Solem v. Helm*, 463 U.S. 277, 284 (1983), but any "extreme sentence[ ] that [is] 'grossly disproportionate to the crime.'"  *Ewing*, 538 U.S. at 23 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment)).  Prior to *Graham*, there was "no agreement on the proper approach to proportionality review."  *Norris*, 622 F.3d at 1286 (citations omitted).  And, therefore, "the only relevant clearly established law amenable to the 'contrary to' or

1   'unreasonable application of' [AEDPA] framework is the gross disproportionality principle, the

2   precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme

3   case.'" *Andrade*, 538 U.S. at 73 (citations omitted).

4          Here, the California Court of Appeal applied both *Ewing* and *Andrade* in concluding that

5   Petitioner's sentence was not proscribed by the Eight Amendment.   Taken together, the Court's

6   cases on the subject stand for the principal that an indeterminate life sentence is not

7   disproportional when sentencing a defendant who has engaged in repetitious criminal activity.

8   *See Andrade*, 538 U.S. at 76 (upholding a sentence of 50 years to life for petty theft on

9   defendant's third strike as reasonable under AEDPA); *Ewing*, 538 U.S. at 30-31 (holding that a

10   sentence of 25 years to life is not grossly disproportionate under California's three strikes law);

11   *Rummel v. Estelle*, 445 U.S. 263, 265 (1980) (affirming a life sentence with possibility of parole

12   for conviction for obtaining $120.75 by false pretenses when it was defendant's third offense).

13   Unlike many of the cases the Supreme Court has dealt with in this area, Petitioner's sentence was

14   not determined by California's three strikes law.   However, the trial court did make a recidivist

15   finding, thereby increasing Petitioner's sentence.   *See* Rep.'s Trans. at 599-600.   Petitioner has a

16   long history of criminal activity, beginning more that ten years before his most recent crime was

17   committed, and ranging from misdemeanor drug offenses to assault with a deadly weapon on a

18   peace officer.   *See* Clerk's Transcript on Appeal, at 337-43. This is not the "exceedingly rare" or

19   "extreme" case that would render the Court of Appeal's judgment unreasonable under then-

20   existing Supreme Court precedent.   Petitioner is not entitled to relief on this claim.

21          3.  Claim III

22          Lastly, Petitioner claims that his right to a fair trial before an unbiased tribunal was

23   violated when the trial judge directly asked questions of witnesses on numerous occasions

24   throughout his trial.   In addressing Petitioner's claim the California Court of Appeal did not

25   directly address the federal guarantee to a fair trial, but stated as follows:

26   / / /

*Court Question Of Witnesses*

Defendant contends that "the court went far beyond its proper function of questioning witnesses to clarify evidence for the fact finder. The court abandoned its role as [an] impartial arbiter, and donned the role of adversarial advocate."

To this end, defendant mechanically cites (on pages 28 through 36 of his opening brief) a large number of instances in which the court had asked questions of a witness on its own and at the behest of the two jury panels after the parties finished their examination of a witness (which the People's brief adroitly summarizes). Defendant lists these with little more than editorial paraphrase,FN5 rather than fully cite them in context.

> FN5. For example, questioning "began innocuously enough," but later the court "interrupted," "intervened," and "broke in."

As the People correctly maintain, this précis does not provide "any specific instance where the court's questioning was 'repetitious, disparaging, [ ]or prejudicial' " in contravention of the restrictions on a court's exercise of its authority to examine witnesses in order to clarify testimony or cover any omissions to the end of ensuring the full development of the facts for the jury's proper determination of the case. (*People v. Harris* (2005) 37 Cal.4th 310, 350 [pointing out that court must appear neutral and not give any indication to jury of directing a verdict, or do anything to distort record]; *People v. Raviart* (2001) 93 Cal.App .4th 258, 270, 272 [questioning not repetitious, disparaging, or prejudicial].)

The People are also correct that defendant has not identified any failure of the trial court to comply with its announced intentions to follow the established procedures for consideration of jury questions (Cal. Rules of Court, rule 2.1033), which included the lengthy jury instruction about the procedures that the comment to the rule recommends.FN6 Nor has defendant taken issue with the court's reaffirmation (when it denied the second mistrial motion) of its compliance with these procedures. Finally, defendant has not "pointed to any specific instance where the court exhibited any bias toward [defendant] in the manner in which [the court] asked the jurors' questions or ... addressed [his] counsel," or to any irregularity in the questions themselves (cf. *People v. McAlister* (1985) 167 Cal.App.3d 633, 645-646 [must be bias or irregularity in direct questions from jury in order to result in reversible error] ).

> FN6. In addition, the court gave the pattern admonition instructing the jury that "It is not my role to tell you what your verdict should be. Do not take anything I said or did during the trial as an indication of what I think about the facts, the

14

witnesses, or what your verdict should be."

As a result, this is nothing more than a perfunctory claim of error (despite its lengthy nature), which forfeits plenary consideration of the issue. (*See People v. Oates* (2004) 32 Cal.4th 1048, 1068, fn. 10.) Since we therefore do not have any need "to detail further the numerous [cited] instances in which the trial court participated in the examination of witnesses," it is enough to say that we have "thoroughly reviewed the transcript of the trial and each [cited] instance ..., and we are satisfied that the trial court's involvement did not constitute misconduct." (*People v. Raviart*, *supra*, 93 Cal.App.4th at p. 271.)

Slip Op. at 3-4 (some footnotes omitted).

Trial judges are given wide latitude in regard to the supervision of trials.  *See Walker v. Sumner*, 14 F.3d 1415 (9th Cir. 1993); *United States v. Laurins*, 857 F.2d 529, 537 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989).  The judge is not a mere umpire; he is "the governor of the trial for the purpose of assuring its proper conduct," *Quercia v. United States*, 289 U.S. 466, 469 (1933), who "may participate in the examination of witnesses to clarify evidence."  *Laurens*, 857 F.2d at 537; *see also United States v. Trapnell*, 512 F.2d 10, 12 (9th Cir. 1975) ("[T]he trial judge may question a witness if he deems it necessary to clarify a matter or to more fully develop the facts for the benefit of the jury.") *Logue v. Dore*, 103 F.3d 1040, 1045 (1st Cir. 1997) (discussing a court's common law power to question witnesses).  For instance, the Federal Rules of Evidence give a judge the power to interrogate witnesses. Fed. R. Evid. 614(b).  However, "The Due Process Clause entitles a person to an impartial and disinterested tribunal." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980).  "A judge's participation justifies a new trial only if the record shows actual bias or leaves an abiding impression that the jury perceived an appearance of advocacy or partiality."  *Walker*, 14 F.3d at 1423 (citing *Laurins*, 857 F.2d at 537); *see also United States v. Mares*, 940 F.2d 455, 464 (9th Cir. 1991); *United States v. Mostella*, 802 F.2d 358, 361 (9th Cir. 1986).

/ / /

/ / /

15

1    Petitioner alleges that he was "prosecuted by two prosecutors"–the District Attorney and

2    the trial judge.  While the record reflects that the trial judge engaged in questioning of several

3    witnesses, and that such questioning may have elicited additional evidence which the jury found

4    important in reaching its decision (several of the questions were asked at the behest of notes from

5    the jury after the Judge asked if the members of the jury had any questions, *see* Rep.'s Trans. at

6    158), a careful review of the record shows the trial judge was not advocating the position of the

7    prosecution such that actual bias or prejudice against Petitioner was created.  *Cf. Quercia*, 289

8    U.S. at 472-73 (concluding that judge's statement regarding the credibility of a witness was

9    impermissible additional evidence); *Connley v. United States*, 46 F.2d 53, 56 (9th Cir. 1931)

10   (finding prejudice where judge intimidated witness to testify regarding defendant's identity).  The

11   trial judge was acting reasonably and was within his discretion to clarify and more fully develop

12   the facts as he thought may be necessary to aid the jury.  As such, Petitioner is not entitled to

13   relief on this claim.

14                    IV.  REQUEST FOR AN EVIDENTIARY HEARING

15   Finally, Petitioner requests an evidentiary hearing on his Claims.  (*See* Pet'r's Traverse at

16   p. 3.)  A court presented with a request for an evidentiary hearing must first determine whether a

17   factual basis exists in the record to support petitioner's claims, and if not, whether an evidentiary

18   hearing "might be appropriate."  *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999); *see*

19   *also Earp v. Ornoski*, 431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an

20   evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief."

21   *Earp*, 431 F.3d at 1167 (citations omitted).  To show that a claim is "colorable," a petitioner is

22   "required to allege specific facts which, if true, would entitle him to relief."  *Ortiz v. Stewart*, 149

23   F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).  In this case,

24   Petitioner's claims are readily determined by the record.  Petitioner has not alleged any additional

25   facts that, if true, would entitle him to relief and therefore Petitioner failed to demonstrate that he

26   has a colorable claim for federal habeas relief.  Thus, his request will be denied.

V.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary hearing is DENIED.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  May 27, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE